Case No. 3:24-cv-01786-L

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,

                Reorganized Debtor.

---

HUNTER MOUNTAIN INVESTMENT TRUST,

                Appellant,

     v.

HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, and
JAMES P. SEERY, JR.,

                Appellees.

---

On Appeal from the United States Bankruptcy Court for the Northern
District of Texas, Dallas Division, Bankruptcy Case No. 19-34054-sgj11
Hon. Stacey G. C. Jernigan

---

### APPELLEES' BRIEF

---

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100

*Counsel for Highland Capital Management, L.P.,
and the Highland Claimant Trust*

WILLKIE FARR & GALLAGHER LLP
Mark Stancil
Joshua S. Levy
1875 K. Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000

REED SMITH LLP
Omar J. Alaniz (Texas Bar No. 24040402)
Lindsey L. Robin (Texas Bar No. 24091422)
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
Telephone: (469) 680-4292

*Counsel for James P. Seery, Jr.*

## CORPORATE DISCLOSURE STATEMENT

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. Appellee Highland Claimant Trust is a Delaware statutory trust. No publicly held corporation owns 10% or more of the interests in either entity.

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT .................................................................. 1

II.     ISSUE PRESENTED ....................................................................................... 2

III.    STANDARD OF REVIEW ............................................................................. 3

IV.    COUNTERSTATEMENT OF THE CASE ................................................... 3

V.     SUMMARY OF ARGUMENT ....................................................................... 7

VI.    ARGUMENT ................................................................................................... 8

      A.     This Is An Unauthorized Interlocutory Appeal ..................................... 8

      B.     Abuse of Discretion Standard ............................................................. 10

      C.     The Bankruptcy Court Used the Appropriate Standard ...................... 10

      D.     The Issue Before the Bankruptcy Court was the Same Issue as Before ................................................................................................. 15

      E.     The Stay Order Reflects a Proper Application of Discretion .............. 17

VII.   CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Okan Holdings, Inc.*,
    116 F.3d 153 (5th Cir. 1997) ...............................................................1

*Borne v. A&P Boat Rentals No. 4, Inc.*,
    755 F.2d 1131 (5th Cir. 1985) .............................................................1

*Brock v. Walden Univ., L.L.C.*,
    2024 U.S. App. LEXIS 9603 (5th Cir. April 19, 2024) ...............................1

*Clem v. Tomlinson*,
    2019 U.S. Dist. LEXIS 6926 (N.D. Tex. Jan. 15, 2019) .................................9

*Clinton v. Jones*,
    520 U.S. 681 (1997) ................................................................... 10, 17

*Foster v. Holder (In re Foster)*,
    544 F. App'x 328 (5th Cir. 2016) ......................................................10

*Greco v. NFL*,
    116 F. Supp. 3d 744 (N.D. Tex. 2015) ........................................ 11, 13, 16

*IFS Fin. Corp.*,
    803 F.3d 195, 203 (5th Cir. 2015) ..................................................... 10, 18

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .........................................................................11

*Love v. Tyson Foods, Inc.*,
    677 F.3d 258 (5th Cir. 2012) ............................................................10

*Miller Weisbrod, LLP v. Klein Frank, PC*,
    2014 U.S. Dist. LEXIS 82125 (N.D. Tex. Jun. 17, 2014)........................17

*Parson v. Unknown*,
    2018 U.S. Dist. LEXIS 102958 (N.D. Tex. June 20, 2018)..........................9

*United States v. Rainey*,
    757 F.3d 234 (5th Cir. 2014) ............................................................10

*Wedgeworth v. Fibreboard Corp.*,
    706 F.2d 541 (5th Cir. 1983) .............................................................17

## **STATUTES**

28 U.S.C. § 158(a)(3)................................................................................7, 9

## **RULES**

Fed. R. Bankr. P. 8004 ................................................................... 6, 7, 8, 9

## I.      JURISDICTIONAL STATEMENT

Appellees disagree with Appellant's "jurisdictional statement" in its *Opening Brief* [Doc. 16] ("**Appellant's Brief**").[1] Appellant has proceeded with an appeal of an interlocutory order without leave of this Court. The Stay Order is interlocutory, something Appellant implicitly concedes by stating in Appellant's Brief that the Stay Order "should be treated as final and appealable." Appellant has also made the implicit explicit by moving this Court for an order granting Appellant leave to appeal the Stay Order,[2] openly acknowledging that the Stay Order is interlocutory. Because the Stay Order is interlocutory and because this Court has not granted Appellant leave to appeal the Stay Order, this Court lacks jurisdiction to hear this appeal and it should be dismissed.[3]

To avoid this result, Appellant argues that the Stay Order "has 'the practical effect' of a dismissal," making the Stay Order the exceptional interlocutory order that should be "treated as final and appealable" as of right. For the reasons stated in

---

[1] Capitalized terms used but not defined in this brief retain the meanings given to them in the Appellant's Brief.

[2] *Highland's Motion to Stay Contested Matter [Dkt No. 4000] or for Alternative Relief* [Doc. 4013] ROA.001630-001637 (the "**Interlocutory Motion**").

[3] *See, e.g.*, *Brock v. Walden Univ., L.L.C.*, 2024 U.S. App. LEXIS 9603 , at *1–2 (5th Cir. Apr. 19, 2024) ("Here, Brock appeals nonfinal orders for which the district court did not enter a final judgment. Nor did the district court certify any of these orders for appeal…. Consequently, we lack jurisdiction to hear this appeal, and it is dismissed"), citing *Allen v. Okan Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997), and *Borne v. A&P Boat Rentals No. 4, Inc.*, 755 F.2d 1131, 1133 (5th Cir. 1985).

Appellees' *Highland Parties' Omnibus Reply in Support of Motions to Dismiss Appeal and to Suspend Briefing* [Doc. 22], Appellant is wrong about what the Stay Order says and what its "practical effect" is. The Stay Order does not impose an "indefinite" stay. By its own unambiguous terms, the Stay Order expires when final, non-appealable orders are entered resolving two of Appellant's other appeals seeking rulings on the same threshold issue presented here. One appeal is fully briefed and *sub judice* and the other will be fully briefed by next week. Both could be decided any day. That single condition in the Stay Order is unequivocally finite.

The Stay Order is interlocutory. This Court has not granted Appellant leave to appeal it. This Court lacks jurisdiction over this appeal, which should be dismissed.

## II.   ISSUE PRESENTED

Appellant's statement of the sole issue presented in this appeal is beset with argument and Appellant's mischaracterizations of the facts in the record. The issue is better and more objectively stated thus: whether the Bankruptcy Court abused its discretion in issuing the Stay Order.

### III.    STANDARD OF REVIEW

Appellees agree that this Court reviews the Bankruptcy Court's entry of the Stay Order using an abuse of discretion standard.[4]

### IV.    COUNTERSTATEMENT OF THE CASE

Appellant can only succeed in this appeal by mischaracterizing what the Bankruptcy Court did, how it did it, and why. Appellant's statement of the case is not just convoluted; it's sophistry. The facts in the record are uncomplicated:

Appellant's Motion for Leave[5] sought leave to bring an action in Delaware Chancery Court to remove Mr. Seery as trustee of the Claimant Trust. Appellant conceded in its Motion for Leave that Delaware law provides that a trustee of a statutory trust such as the Claimant Trust may be removed only "on petition of a trustor, another officeholder, or **beneficiary**."[6] Appellant also conceded that it is not a Claimant Trust Beneficiary with rights in the Claimant Trust[7]—but argued Appellant is nevertheless entitled as a "deemed beneficiary" of the Claimant Trust under Delaware law to seek Mr. Seery's removal.

---

[4] The remainder of the "Standard of Review" section in Appellant's Brief simply repeats Appellant's argument that the Stay Order should somehow be regarded as a final order. That argument has nothing to do with the appropriate standard of review.

[5] ROA.001468-1505.

[6] ROA.001468-1487, quoting DEL. CODE ANN. TIT. 12, § 3327 (emphasis added).

[7] *Id.*

The Motion for Leave was Appellant's third attempt to persuade the Bankruptcy Court that it was entitled to exercise remedies under the Claimant Trust Agreement despite that it is not a beneficiary of the Claimant Trust.

The first time was in connection with Appellant's motion for Bankruptcy Court leave to file a complaint pertaining to alleged improprieties regarding claims trading—what Appellant refers to as the "Claims Trading Proceeding"—filed in March 2023. After an evidentiary hearing, the Bankruptcy Court issued a lengthy memorandum opinion and order on August 25, 2023, denying that motion for leave because, among other reasons, Appellant was not a Claimant Trust Beneficiary or a "beneficial owner" of the Claimant Trust and should not be treated as such.[8] Appellant appealed that order, commencing case number 3:23-cv-02071-E in this Court (Judge Brown). That appeal (the "**Claims Trading Appeal**") was fully briefed and submitted for ruling in April 2024.

The second time was in connection with the so-called "Valuation Proceeding" identified in Appellant's Brief. Appellant conceded in the Valuation Proceeding that the only entities with information rights under the Claimant Trust Agreement are Claimant Trust Beneficiaries. Notwithstanding that Appellant has also conceded it

---

[8] *Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation "Gatekeeper Orders": Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding [Bankr. Dkt. Nos. 3699, 3760, 3815, and 3816]* [Doc. 3903] ROA.001363-001467.

is not a Claimant Trust Beneficiary, Appellant sought in the Valuation Complaint a declaration that it should be "deemed" a "beneficiary" with the right to information about the Claimant Trust's assets and liabilities. In another lengthy memorandum opinion and order, the Bankruptcy Court granted Highland's motion to dismiss that action on the same basis the Bankruptcy Court denied leave in the Claims Trading Proceeding—that Appellant was not a Claimant Trust Beneficiary: "Now, as before, the court finds and concludes that under the terms of the CTA and Delaware law, Plaintiffs are not beneficiaries or 'beneficial owners' of the Claimant Trust who would be entitled to assert rights under the CTA."[9] Appellant appealed that order, commencing case number 3:24-CV-1531-X in this Court (Judge Starr). That appeal (the "**Valuation Appeal**") will be fully briefed next week after Appellant files its reply.

The fundamental issue in all three cases is identical: whether Appellant is a Claimant Trust Beneficiary under the terms of the Claimant Trust, the Plan and applicable law. Recognizing that it already ruled against Appellant *twice before on that exact issue,* the Bankruptcy Court properly exercised its discretion and issued the Stay Order to avoid wasting judicial and party resources litigating the same issue subject to the Claims Trading and Valuation Appeals: "The Stay is hereby extended

---

[9] *Memorandum Opinion and Order Granting Motion to Dismiss Adversary Proceeding in Which Contingent Interest Holders in Chapter 11 Plan Trust Seek a Post-Confirmation Valuation of Trust Assets* [23-03038-sgl, Doc. 27] at ROA.001939.

until a court of competent jurisdiction enters final, non-appealable orders resolving the Appeals …."[10] In doing so, the Bankruptcy Court found that "the legal and factual bases set forth in [Highland's motion seeking the Stay Order] establish good cause for the relief granted herein for the reasons set forth on the record during the Hearing …."[11] Those legal and factual bases, established in Highland's motion to extend the stay and adopted in the Stay Order, can be easily summarized: (a) Appellant is not a Claimant Trust Beneficiary and therefore has no right to seek remedies against Mr. Seery under either the Claimant Trust Agreement or Delaware law; and (b) whether Appellant should be treated like a Claimant Trust Beneficiary even though it isn't one is already before this Court in two separate, earlier appeals.

---

[10] ROA.001695.

[11] Those reasons are found in the transcript of the Bankruptcy Court hearing on June 12, 2024, (the "**Hearing Transcript**") at 42–46 ROA.002029-002033:

> I'm going to extend the stay on letting the contested matter go forward until all appeals have been finally exhausted in connection with this Court's prior orders in which it has ruled Hunter Mountain does not have [standing] …. Twice now, this Court has ruled that Hunter Mountain does not have standing to pursue litigation. The first time was in connection with when Hunter Mountain wanted to sue claims purchasers…. I ruled extensively then, and I hear Judge Brown has it on appeal now…. And then I understand there's a new appeal when the Court ruled Hunter Mountain doesn't have standing to pursue a valuation complaint. … I have not been convinced today that the standing issues now with regard to this newest Hunter Mountain motion are sufficiently different where I should go forward and hear the motion for leave. … I think it's in the interests of judicial economy and the efficient administration of justice and in the interests of the parties that I continue the stay in effect. … I've been asked again and again and again to rule on this issue. … I have done three lengthy rulings on this. … If this was going forward, if there was not going to be a stay in place, I would be inclined to consider Rule 11 sanctions. How many times is it proper for a party to keep asking for the same thing again and again? You know, we'll use a different counsel this time. We'll say it's different this time. It's not different.

In sum, this appeal concerns the simple question of whether the Bankruptcy Court abused its discretion by entering the Stay Order to prevent repetitive litigation on an issue the Bankruptcy Court has ruled on twice before and which is now before this Court in two separate, pending appeals brought by this same Appellant. The simple answer is "no."

## V.    SUMMARY OF ARGUMENT

This appeal of the interlocutory Stay Order is unauthorized. This Court has not granted leave to appeal the interlocutory Stay Order under Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) and, accordingly, lacks jurisdiction to hear this appeal. It should be dismissed for that reason alone. Substantively, the Bankruptcy Court did not abuse its discretion by entering the Stay Order because: (a) the issue of whether Appellant is a Claimant Trust Beneficiary under the Claimant Trust Agreement, the Plan, and Delaware law is the same issue already before this Court in both the Valuation Appeal and the Claims Trading Appeal; (b) it would have been a waste of judicial and party resources to litigate—a third time—that same issue while the Valuation Appeal and the Claims Trading Appeal were pending; and (c) the Stay Order is finite because, by its unambiguous terms, it will expire as soon as the Valuation Appeal and the Claims Trading Appeal are completed, which could be any day.

## VI.    ARGUMENT

This appeal is impermissible because the Stay Order is an interlocutory order—something Appellant readily concedes—and this Court has not granted Appellant leave to appeal it as required by Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3). This Court lacks jurisdiction over this unauthorized interlocutory appeal and should dismiss it. On the merits, the Bankruptcy Court did not abuse its discretion in entering the Stay Order.

### A.    This Is an Unauthorized Interlocutory Appeal

The Stay Order is an interlocutory order that cannot be appealed without leave of this Court. Appellant acknowledged the interlocutory nature of the Stay Order by filing, the same day as this appeal (July 8, 2024), a second notice of appeal of the same Stay Order, commencing Case No. 3:24-cv-01787-L, attaching (as it was required to do) a *Motion for Leave to File an Interlocutory Appeal* [1787 Dkt. No. 1-7] (the "**Interlocutory Motion**"). In the Interlocutory Motion, Appellant acknowledged that the Stay Order is interlocutory and argued that this Court should grant leave to appeal the interlocutory Stay Order.

On July 22, 2024, Appellees filed their *Opposition to Hunter Mountain Investment Trust's Motion for Leave to File an Interlocutory Appeal* [1787 Dkt. No. 13], in which Appellees agreed with Appellant that the Stay Order was

interlocutory but argued that the Court should *not* grant leave to appeal it. The Interlocutory Motion is fully briefed and awaits this Court's ruling.[12]

A would-be appellant must obtain leave from the appellate court to appeal an interlocutory bankruptcy court order. Rule 8004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that, to "appeal from an interlocutory order or decree of a bankruptcy court under 28 U.S.C. § 158(a)(3), a party must file with the bankruptcy clerk a notice of appeal" that "must … be accompanied by a motion for leave to appeal …." Unless and until the appellate court grants the motion for leave to appeal, the appeal may not proceed. If the appellate court denies leave to appeal, the appeal is dismissed.[13]

Here, although Appellant has properly and timely filed its required motion for leave to appeal—the Interlocutory Motion—the Court has not ruled on it and has not otherwise granted Appellant leave to appeal the interlocutory Stay Order. This Court's leave is required under Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) for

---

[12] On October 15, 2024, the Court ordered that "briefing in the two cases **shall** proceed separately notwithstanding any related issues." [Doc. 21] (emphasis in original). The Court did not rule on whether this interlocutory appeal was proper or whether it has jurisdiction to hear it. Appellees respectfully assume that the Court was unaware that the Interlocutory Motion was fully submitted and awaiting ruling because that is the only pending matter in Case No. 3:24-cv-1787-L.

[13] *See, e.g.*, *Parson v. Unknown*, 2018 U.S. Dist. LEXIS 102958, at *2 (N.D. Tex. June 20, 2018) (Lindsay, J.) (dismissing appeal as a result of leave to appeal interlocutory order being denied, noting that "leave for an interlocutory appeal is granted only in exceptional circumstances that justify overriding the general policy of not allowing such appeals"); *Clem v. Tomlinson*, 2019 U.S. Dist. LEXIS 6926 (N.D. Tex. Jan. 15, 2019) (appeal dismissed following denial of leave to appeal interlocutory order and because appeal was untimely).

Appellant to proceed with its appeal of the Stay Order. Because this Court has not granted that leave, this appeal should be dismissed.

## B.    Abuse of Discretion Standard

Appellant and Appellees agree that this Court reviews the Bankruptcy Court's entry of the Stay Order on an abuse of discretion standard. "A bankruptcy court abuses its discretion when it 'applies an improper legal standard or follows improper procedures' or 'rests its decisions on finding of fact that are clearly erroneous.'"[14] Here, the Bankruptcy Court did none of these things. It did not abuse its discretion because it did not apply an improper legal standard nor did it follow improper procedures. "Deference" to the trial court (here, the Bankruptcy Court) "is the hallmark of abuse-of-discretion."[15]

## C.    The Bankruptcy Court Used the Appropriate Standard

The Bankruptcy Court applied the widely accepted, Supreme Court-endorsed standard for issuing a stay in the service of controlling the Court's docket: "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes of action on its docket *with economy of time and effort for itself, for counsel, and for litigants*."[16] A court "has the power to stay proceedings

---

[14] *Foster v. Holder (In re Foster)*, 544 F. App'x 328 (5th Cir. 2016) (quoting *IFS Fin. Corp.,* 803 F.3d 195, 203 (5th Cir. 2015)).

[15] *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (cleaned up).

[16] *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (cleaned up; emphasis added); *see also United States v. Rainey*, 757 F.3d 234, 241 (5th Cir. 2014) (same).

pending appeal," and "is within its discretion to grant a stay *when a related case with substantially similar issues is pending before a court of appeals*."[17] The Bankruptcy Court applied exactly this standard when it ruled that "it's in the interests of judicial economy and the efficient administration of justice and in the interests of the parties that I continue the stay in effect."[18]

Despite arguing that the Bankruptcy Court used the wrong standard, Appellant fails to cite a single case that calls into question this long-held, widely accepted standard in the context of a trial-level court's temporary, non-substantive, non-injunctive stay to control its own docket and preserve judicial resources. Instead, Appellant urges this Court to apply the "four-prong" standard typically applied to consider an injunction of substantive rights, a standard the Bankruptcy Court was "not sure" was "even the way we should view it."[19] Nonetheless—and despite Appellant's attempts to ignore this reality—the Bankruptcy Court evaluated the requested Stay Order under the four-prong injunction standard, as well:

> But I will nevertheless look at the four-prong test ... Prong #1, whether there has been a showing of likelihood of success on the merits. Again, I view that I've already ruled on this, and I've spilt much ink on this, written well over a hundred pages on this. And I think there is a likelihood of success on the merits with regard to the issue of [HMIT] not having standing.... I think there would be certainly harm and injury

---

[17] *Greco v. NFL*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) (emphasis added) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)).

[18] Hearing Transcript, ROA.002030, at 43:10–13.

[19] Hearing Transcript, ROA.002030, at 45.

here, I'll say irreparable harm, if we had to go through this yet again, yet again, yet again. The balance of harms certainly—well, I don't just find the Reorganized Debtor to be harmed. Whether [HMIT] realizes it or not, everyone is going to be harmed if more litigation, more expense, is incurred litigating the same darn thing again…. So it is not in anyone's interest, as far as balancing of harms here, in this matter going forward, as long as the issues are primed for an appellate judge to either say you got it wrong, Judge Jernigan, or you got it right. And the public interest is, I think, in favor of judicial economy and efficient administration of justice in this regard. So if I go to the four-pronged test, it results in, I think, the stay being extended here.[20]

Appellant fails to mention that the Bankruptcy Court included all of this in its ruling. The Bankruptcy Court, while questioning whether the four-prong standard applied in these circumstances, *applied the exact standard Appellant urges* and found a stay was warranted. Appellant's complaint, then, is not with the standard, but with the result. Appellant discusses a handful of cases in which stays were denied or reversed on appeal because the stay would have been contingent on the completion of other litigation in another court featuring unrelated litigants. None of those cases—not *Jamison,* not *Alexander v. Navient Sols, Inc.*—involved a stay that would temporarily pause litigation pending the completion of *an appeal taken by the* ***same*** *party on the* ***same*** *issue from the* ***same*** *case in the* ***same*** *court to the* ***same*** *appellate court.* Appellant ignores that the Stay Order doesn't at all resemble the proposed stay in any of the cases Appellant cites.[21]

---

[20] *Id.* at 43–45.

[21] The cases Appellant relies on involved stays referring to *unrelated* pending litigation or appeals. The matter is entirely different when a stay is based on *related* pending litigation or appeals,

Appellant's re-evaluation of the four-prong test—which does not apply to a non-injunctive, procedural order like the Stay Order, but which the Bankruptcy Court nevertheless addressed—depends on the fanciful characterization of the Stay Order as "indefinite." Only by mischaracterizing the Stay Order's limited scope and length can Appellant argue that a "rebalancing" of the harms is appropriate.

Appellant urges two reasons why the Stay Order is "indefinite." First, Appellant argues that the Stay Order is indefinite because the stay will not lift until the Valuation Appeal and the Claims Trading Appeal are resolved by final, non-appealable orders. Simply calling this provision "indefinite" does not make it so and does not change the fact that: (1) both of those other appeals are fully briefed and *sub judice* such that they could be resolved at any time; and (2) whether those appeals continue on is within Appellant's control because the "several-year delay" Appellant complains of is entirely of its own making.[22] When those appeals are resolved, the Stay Order will be lifted and this appeal will be moot.

---

especially when the *same parties* are involved. Courts in this Circuit routinely "grant a stay when a related case with substantially similar issues is pending before a court of appeals." *Greco*, 116 F. Supp. 3d at 761 (staying "case pending resolution of the appeal filed" in "a related case" that "will very likely bear on this case").

[22] Appellant's Brief contains a chart purporting to demonstrate the length of time appeals tend to take in this Court and the Fifth Circuit Court of Appeals. *Every single one* of the appeals listed on that chart were appeals taken by Dondero-related entities, including Appellant. Resolving issues originating in the Bankruptcy Court has taken years because Appellant and its affiliates have made those resolutions take years with their endless appeals, appeals of appeals, mandamus petitions, and petitions for writ of certiorari. From this one bankruptcy case, these entities have prosecuted more than **50** appeals and mandamus petitions.

Dissolving the stay will not promote the efficient administration of justice in this case. If required to rule on Appellant's Motion for Leave to pursue removal of Mr. Seery in the Delaware Chancery Court, the Bankruptcy Court will almost certainly deny Appellant leave because Appellant is not a beneficiary of the Claimant Trust—a ruling the Bankruptcy Court has already made twice. Appellant would undoubtedly appeal that ruling, which would commence the third appeal on that issue before Courts in the Northern District of Texas. Appellant would be no closer to finding a court hospitable to its arguments and no closer to its efforts to remove Mr. Seery from his role as the Claimant Trustee. Rather, the parties will be required to expend substantial resources on yet another appeal, and likely three separate judges in the Northern District of Texas would have their dockets clogged with the same issue. Efficient administration of justice and respect for the judicial process mitigates in favor keeping the Stay Order in place and allowing the judges in this Court who already have this issue before them to rule.

Appellant also argues that the Stay Order is "indefinite" because "the Claimant Trust will by its terms be dissolved and Seery's duties as Claimant Trustee complete [*sic*]"[23] while grudgingly noting in a footnote that the Bankruptcy Court granted Highland's motion to extend the Claimant Trust by one year, to August 11, 2025. Moreover, Highland expressly reserved the right to seek and obtain a further

---

[23] Appellant's Brief at 26.

extension of the Claimant Trust beyond August 11, 2025. Mostly because of the continued litigiousness of Dondero entities like Appellant, the Claimant Trust is not going to be "dissolved" for some ten months at the very least. Appellant knows this, yet cynically suggests otherwise.

There is no indication in the record that the Stay Order is the type of "immoderate" or "indefinite" stay that Appellant's cited cases involve. A basic reading of the Stay Order itself reveals no such indication. That indisputable fact establishes that (a) the Stay Order is interlocutory and cannot be appealed as Appellant has attempted here, and (b) the Bankruptcy Court did not "abuse its discretion" by temporarily staying Appellant's third attempt to get a different answer on the same issue from the same court. The Stay Order—under either standard the Bankruptcy Court applied—is a common-sense measure to control the Bankruptcy Court's docket, this Court's docket (where two different judges are already considering the same issue), preserve judicial resources, prevent needless expense for all parties (including Appellant), and avoid wasting time "going through this yet again, yet again, yet again."

## D.    The Issue Before the Bankruptcy Court Was the Same Issue as Before

Appellant spends several pages attempting to create nuance where none exists or matters. Even if this Court accepted Appellant's tortured efforts at establishing minute, technical differences between the beneficiary standing issue at the heart of

the Valuation Appeal, the Claims Trading Appeal, and the Motion for Leave, this Court need not conclude that the issues must be *identical* to affirm the Stay Order. This Court endorses the propriety of stays issued when "*substantially similar* issues [are] pending before a court of appeals."[24] Stating the obvious, "substantially similar" does not mean "identical."

Even if Appellant were correct that the issues between the Motion for Leave and the other appeals are slightly different—they're not—it remains true that the parties are identical, the underlying bankruptcy case is identical, and the threshold issue (whether Appellant is a Claimant Trust Beneficiary) is identical. The only real "difference" Appellant argues is what Appellant would be able to accomplish in each case if some court somewhere ruled that Appellant is a Claimant Trust Beneficiary despite the clear terms of the Claimant Trust Agreement. That difference has no bearing on why the Bankruptcy Court entered the Stay Order. Again, the Bankruptcy Court's core reason for the Stay Order was that the Motion for Leave required a determination of whether Appellant is a Claimant Trust Beneficiary, and that *exact issue* is already substantively before this Court in the Valuation Appeal and the Claims Trading Appeal. For every reason that matters to this appeal, the issue *is* identical. The Stay Order was, in that uncomplicated context, more than appropriate, customary, and common-sensical.

---

[24] *Greco*, 116 F. Supp. 3d at 761 (emphasis added).

**E.    The Stay Order Reflects a Proper Application of Discretion**

Whether to issue a procedural stay is left to the bankruptcy court's discretion.[25] Evaluated by the correct standard in this context—the *Clinton v. Jones* and *Rainey* standard applying to procedural, docket-controlling stays that do not enjoin a litigant and do not affect a litigant's substantive rights—the Stay Order reflected a commendable exercise of the Bankruptcy Court's discretion to preserve judicial resources and save all litigants significant fees associated with duplicative (or "triplicative") litigation. The Supreme Court approves procedural, non-substantive stays like the Stay Order in the interests of "controlling the disposition of causes of action on its docket *with economy of time and effort for itself, for counsel, and for litigants*."[26]

That is exactly what the Bankruptcy Court found:

> I think it's **in the interests of judicial economy and the efficient administration of justice** and in the interests of the parties that I continue the stay in effect. … I've been asked again and again and again to rule on this issue.… I have done three lengthy rulings on this.… How many times is it proper for a party to keep asking for the same thing again and again?[27]

---

[25] *Miller Weisbrod, LLP v. Klein Frank, PC*, 2014 U.S. Dist. LEXIS 82125, at *7 (N.D. Tex. June 17, 2014) (a trial-level court "has broad discretion when determining whether to grant a stay pursuant to its inherent powers") (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)).

[26] *Clinton*, 520 U.S. at 706–07 (emphasis added).

[27] Hearing Transcript, ROA.002030 at 44–46 (emphasis added).

The Stay Order resulted from the Bankruptcy Court's careful consideration following full briefing by both parties and a lengthy hearing at which Appellant's counsel was heard extensively. As noted above, a bankruptcy court does not abuse its discretion if it applies the correct standard and follows proper procedures.[28]

## VII.     CONCLUSION

Because the Bankruptcy Court applied the correct standard to evaluate whether to enter the Stay Order, because it scrupulously implemented appropriate procedures—including full briefing and oral argument—leading to the Stay Order's entry, and because the Bankruptcy Court did not make clearly erroneous findings of fact, this Court should conclude that the Bankruptcy Court did not abuse its discretion in entering the Stay Order. If this Court does not dismiss this unauthorized interlocutory appeal for lack of jurisdiction, the Court should affirm the Stay Order.

---

[28] *IFS Fin. Corp.*, 803 F.3d at 203. The Stay Order did not require findings of fact beyond the Bankruptcy Court's taking judicial notice of the pendency of the Valuation Appeal and the Claims Trading Appeal and the contents of previous filings on its own docket. That component of the test for abuse of discretion does not apply here. Appellant does not argue otherwise.

Dated: October 16, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email:    jpomerantz@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Email:    MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

**WILLKIE FARR & GALLAGHER LLP**
Mark Stancil
Joshua S. Levy
1875 K. Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1000

-and-

**REED SMITH LLP**
*/s/ Omar J. Alaniz*
Omar J. Alaniz (Texas Bar No. 24040402)
Lindsey L. Robin (Texas Bar No. 24091422)
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
Telephone: (469) 680-4292

*Counsel for James P. Seery, Jr.*

## CERTIFICATE OF COMPLIANCE WITH RULE 8015

1.      This brief complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains 4,753 words, excluding the portions of the brief exempted by Fed. R. Bankr. P. 8015(g).

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point type of footnotes).


By: */s/ Zachery Z. Annable*
Zachery Z. Annable